**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 19-79-LPS |
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., and CONTRARIAN DOME DU GOUTER MASTER FUND, LP, <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 21-18-LPS |

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., EMMA 1 MASTER FUND, L.P., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC, <br><br>        Plaintiffs, <br><br>    v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>        Defendant. | <br><br><br><br><br><br><br><br><br><br><br> Misc. No. 22-131-LPS |
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., BOSTON PATRIOT SUMMER ST LLC, POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., EMMA 1 MASTER FUND, L.P., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC, <br><br>        Plaintiffs, <br><br>    v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>        Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br> Misc. No. 22-263-LPS |

| | |
|---|---|
| VALORES MUNDIALES, S.L. and CONSORCIO ANDINO, S.L.,<br><br>     Plaintiffs,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>     Defendant. | Misc. No. 23-298-LPS |
| RUDI LOVATI and ALESSANDRO LUCIBELLO PIANI,<br><br>     Plaintiffs,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>     Defendant. | Misc. No. 23-340-LPS |
| PHARO GAIA FUND LTD. and PHARO MACRO FUND LTD.,<br><br>     Plaintiffs,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>     Defendant. | Misc. No. 23-360-LPS |

| | |
|---|---|
| PHARO GAIA FUND LTD., PHARO MACRO FUND LTD. and PHARO TRADING FUND, LTD.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Misc. No. 23-361-LPS |
| GRAMERCY DISTRESSED OPPORTUNITY FUND LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Misc. No. 23-378-LPS |
| GRAMERCY DISTRESSED OPPORTUNITY FUND LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Misc. No. 23-379-LPS |

| | |
|---|---|
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, <br><br>         Plaintiff, <br><br>      v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>         Defendant. | Misc. No. 23-397-LPS |

Andrew S. Dupre and Sarah E. Delia, MCCARTER & ENGLISH, LLP, Wilmington, DE

Miguel López Forastier and Mark D. Herman, COVINGTON & BURLING LLP, Washington, DC

     Attorneys for Plaintiffs Tidewater Investment SRL and Tidewater Caribe S.A.

Rebecca L. Butcher and Jennifer L. Cree, LANDIS RATH & COBB LLP, Wilmington, DE

Steven F. Molo, Justin M. Ellis, Lauren F. Dayton, and Mark W. Kelley, MOLOLAMKEN LLP, New York, NY

     Attorneys for Plaintiffs Contrarian Capital Management, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Dome du Gouter Master Fund, LP, Contrarian Capital Senior Secured, L.P., Contrarian EM II, LP, Contrarian Emerging Markets, L.P., Boston Patriot Summer St LLC, Polonius Holdings, LLC, Emma 1 Master Fund, L.P., Contrarian Funds, L.L.C., and E1 SP

Andrew S. Dupre and Sarah E. Delia, MCCARTER & ENGLISH, LLP, Wilmington, DE

Miguel López Forastier and José E. Arvelo, COVINGTON & BURLING LLP, Washington, DC

     Attorneys for Plaintiffs Valores Mundiales, S.L. and Consorcio Andino, S.L.

Christopher M. Winter, James C. Carignan, Mackenzie M. Wrobel, and Tracey E. Timlin, DUANE MORRIS LLP, Wilmington, DE

David T. McTaggart, Anthony J. Costantini, and Stephanie Lamerce, DUANE MORRIS LLP, New York, NY

Rudolph J. DiMassa, DUANE MORRIS LLP, Philadelphia, PA

      Attorneys for Plaintiffs Rudi Lovati and Alessandro Lucibello Piani

Stephen B. Brauerman and Sarah T. Andrade, BAYARD, P.A., Wilmington, DE

      Attorneys for Plaintiffs Pharo Gaia Fund Ltd., Pharo Macro Fund Ltd., and Pharo Trading Fund, Ltd.

Theodore A. Kittila, HALLORAN FARKAS + KITTILA LLP, Wilmington, DE

Mark W. Friedman, William H. Taft V, Sarah Lee, and Juan Fandiño, DEBEVOISE & PLIMPTON LLP, New York, NY

      Attorneys for Plaintiff Gramercy Distressed Opportunity Fund LLC

Laura Davis Jones and Peter J. Keane, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE

Alexander A. Yanos and Robert Poole, ALSTON & BIRD, LLP, New York, NY

      Attorneys for Plaintiff Saint-Gobain Performance Plastics Europe

A. Thompson Bayliss and Stephen C. Childs, ABRAMS BAYLISS LLP, Wilmington, DE

Donald B. Verrilli, Jr., Elaine J. Goldenberg, and Ginger D. Anders, MUNGER, TOLLES & OLSON LLP, Washington, DC

George M. Garvey and Adeel Mohammadi, MUNGER, TOLLES & OLSON LLP, Los Angeles, CA

      Attorneys for Defendant Bolivarian Republic of Venezuela

Samuel T. Hirzel, II, Gillian L. Andrews, and Brendan Patrick McDonnell, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE

Claire A. DeLelle, Nicole Erb, and Benedict S. Bernstein, WHITE & CASE LLP, Washington, DC

Joseph D. Pizzurro, Kevin A. Meehan, Juan O. Perla, Aubre G. Dean, and Allesandra D. Tyler, CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, New York, NY

 Attorneys for Intervenor Petróleos de Venezuela, S.A.

**<u>MEMORANDUM OPINION</u>**

November 1, 2023
Wilmington, Delaware

**STARK, U.S. Circuit Judge:**

The Court has before it actions brought by seven sets of creditors ("Seven Creditors")[1] of the Bolivarian Republic of Venezuela ("Venezuela"), all of whom seek to collect on their judgments by attaching property held by Venezuela in this District.  These various judgment creditors have filed motions for a writ of attachment *fieri facias* against the shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA"), which is the state oil company of Venezuela.  Venezuela opposes the motions for a writ of attachment.  PDVSA, having intervened in each of these cases, also opposes the motions for a writ of attachment and has additionally filed cross-motions to dismiss.  PDVSA's motions to dismiss contend that under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, the Court lacks jurisdiction over PDVSA and that PDVSA's assets are immune from attachment and execution.

The motions are fully briefed and the Court heard oral argument on September 12, 2023. (*See, e.g.*, Misc. No. 19-79 D.I. 83) ("Tr.")  For the reasons set out below, the Court will grant the

---

[1] The actions that are the subject of this opinion are all identified in the caption and include the following judgment creditors: (1) Tidewater Investment SRL and Tidewater Caribe S.A., Misc. No. 19-79 ("*Tidewater* Action"); (2) Contrarian Capital Management, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Dome du Gouter Master Fund, LP, Contrarian Capital Senior Secured, L.P., Contrarian EM II, LP, Contrarian Emerging Markets, L.P., Boston Patriot Summer St LLC, Polonius Holdings, LLC, Emma 1 Master Fund, L.P., Contrarian Funds, L.L.C., and E1 SP, Misc. Nos. 21-18, 22-131, and 22-263 ("*Contrarian* Actions"); (3) Valores Mundiales, S.L. and Consorcio Andino, S.L., Misc. No. 23-298 ("*Valores* Action"); (4) Pharo Gaia Fund Ltd., Pharo Macro Fund Ltd., and Pharo Trading Fund, Ltd., Misc. Nos. 23-360 and 23-361 ("*Pharo* Actions"); (5) Rudi Lovati and Alessandro Lucibello Piani, Misc. No. 23-340 ("*Lovati* Action"); (6) Gramercy Distressed Opportunity Fund LLC, Misc. Nos. 23-378 and 23-379 ("*Gramercy* Actions"); and (7) Saint-Gobain Performance Plastics Europe, Misc. No. 23-397 ("*Saint-Gobain* Action").  In this opinion, the Court refers to the Tidewater, Contrarian, Valores, Pharo, Lovati, Gramercy, and Saint-Gobain entities as the "Seven Creditors."

Seven Creditors' motions for a writ of attachment[2] and will deny the Venezuela Parties'[3] motions to dismiss.[4]

The Court also addresses an issue that has arisen in just one of these actions. In Misc. No. 23-340 (the "*Lovati* Action"), the creditors, Rudi Lovati and Alessandro Lucibello Piani, seek leave to file their Attached Judgment Statement ten days late. The Court will grant this motion.

## BACKGROUND

Venezuela is the 100% owner of the oil company PDVSA, which in turn owns 100% of the shares of PDVH. PDVH owns 100% of the shares of CITGO Holding, Inc., which owns 100% of the shares of CITGO Petroleum Corp., a Delaware corporation headquartered in Texas. Beginning in 2017, multiple creditors holding judgments against Venezuela or PDVSA have registered their judgments in this District and have sought to enforce them by attaching and executing on the shares of PDVH owned by PDVSA. The first such action was brought by Crystallex International Corp. ("Crystallex"), Misc. No. 17-151 ("*Crystallex* Action"). In the *Crystallex* Action, Crystallex registered its judgment against Venezuela in this District and then moved for permission to attach the PDVH shares held by PDVSA on the ground that PDVSA was Venezuela's alter ego. (*See* Misc. No. 17-151 D.I. 2) The Court found that PDVSA was Venezuela's alter ego and granted Crystallex's motion for a writ of attachment. *See Crystallex*

---

[2] Misc. Nos. 19-79 D.I. 5; 21-18 D.I. 47; 22-131 D.I. 46; 22-263 D.I. 46; 23-298 D.I. 8; 23-340 D.I. 2; 23-360 D.I. 3; 23-361 D.I. 3; 23-378 D.I. 2; 23-379 D.I. 2; 23-397 D.I. 2.

[3] For ease of reference, the Court refers to Venezuela and PDVSA collectively as "the Venezuela Parties" and attributes the arguments made by either Venezuela or PDVSA to "the Venezuela Parties."

[4] Misc. Nos. 19-79 D.I. 61; 21-18 D.I. 56; 22-131 D.I. 55; 22-263 D.I. 55; 23-298 D.I. 23; 23-340 D.I. 18; 23-360 D.I. 16; 23-361 D.I. 16; 23-378 D.I. 25; 23-379 D.I. 24; 23-397 D.I. 15.

*Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 426 (D. Del. 2018) ("*Crystallex I*").  The Court of Appeals for the Third Circuit affirmed.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex II*").

In January 2019, after a disputed election, two individuals claimed to be the leader of the government of Venezuela: one led by Nicolas Maduro, who had been the president of Venezuela since 2013, and the other led by Juan Guaidó, who was declared the rightful president by Venezuela's National Assembly.  The United States recognized the Guaidó government as legitimate.  The United States also imposed and expanded sanctions on transactions involving the property of Venezuela in the United States.

While those events were unfolding, other judgment creditors of Venezuela, including OI European Group B.V. ("OIEG"), brought enforcement actions in this Court.  *See, e.g.*, Misc. Nos. 19-290, 20-257, 21-46, 21-481 ("*OIEG* Actions").  These judgment creditors registered their judgments in this District and filed motions for a writ of attachment similar to Crystallex's.  (*See, e.g.*, Misc. Nos. 19-290 D.I. 48; 20-257 D.I. 25; 21-46 D.I. 2; 21-481 D.I. 2)  The Court conditionally granted these judgment creditors' motions for a writ of attachment,[5] finding that PDVSA continued to be Venezuela's alter ego, notwithstanding the United States' recognition of the Guaidó government.  *See OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 2023 WL 2609248, at *2 (D. Del. Mar. 23, 2023) ("*OIEG I*").  On appeal, the Third Circuit reviewed

---

[5] The grant of the judgment creditors' motions for a writ of attachment in the *OIEG* Actions was conditioned on the issuance of a license from the United States Office of Foreign Assets Control ("OFAC").  On May 1, 2023, OFAC issued a license to the District of Delaware Clerk of Court, authorizing the issuance of writs of attachment to any judgment creditor the Court decides to add as an Additional Judgment Creditor pursuant to the Sale Procedures Order.  *See* Misc. No. 17-151 D.I. 481; *see also id.* D.I. 555 at 6; D.I. 643 at 5.  Throughout this opinion, capitalized terms that are not otherwise defined herein have the same meaning given to them in the Sale Procedures Order.  (Misc. No. 17-151 D.I. 481)

the "narrow question" of whether this Court, in *OIEG I*, properly denied PDVSA's immunity under the FSIA and affirmed this Court's ruling.  *See OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023) ("*OIEG II*").

The Court now addresses the motions for a writ of attachment filed by additional judgment creditors of Venezuela who have registered their judgments in this District and are, like the creditors discussed above, seeking to attach the shares of PDVH owned by PDVSA.

## LEGAL STANDARDS

The Court adheres to, adopts, and hereby incorporates by reference its analysis of the legal standards governing the issuance of writs of attachment (including its discussion of Federal Rule of Civil Procedure 69(a), 10 *Del. C.* § 5031, and 8 *Del. C.* § 324(a)) with respect to property of an agency or instrumentality of a foreign sovereign as set out in *Crystallex I*, 333 F. Supp. 3d at 388-89, 394-95, 399-401, 404-05, including to the extent that analysis has been modified by the Third Circuit in *Crystallex II*, 932 F.3d at 134, 136, 144-46 and *OIEG II*, 73 F.4th at 168-72.  In assessing whether PDVSA is Venezuela's alter ego, the Court considers "all relevant facts up to the time of the service of the writ of attachment," which is the "pertinent time" to be accounted for in this analysis.  *OIEG II*, 73 F.4th at 168, 171-72.

## DISCUSSION

The Seven Creditors, all of whom hold judgments against Venezuela, ask that the Court grant their motions for a writ of attachment *fieri facias*.  They argue that PDVSA remained and remains Venezuela's alter ego during the pertinent time and can assert neither jurisdictional immunity nor execution immunity under the FSIA.  (*See, e.g.*, Misc. No. 19-79 D.I. 29-2 at 24-29)  They also contend that Delaware law governing attachment and execution on a judgment

4

allows them to attach the shares of PDVH, a Delaware corporation, owned by PDVSA through a writ of attachment *fieri facias*.  (*See, e.g.*, *id.* at 21-22)[6]

　　While briefing on the judgment creditors' motions was ongoing, the Third Circuit issued its decision in *OIEG II*, affirming this Court's ruling on the issues of PDVSA's alter ego status and its entitlement to FSIA immunity.  *See* 73 F.4th at 163.  Thereafter, the parties in each action that is the subject of this opinion stipulated that "PDVSA is not immune under the FSIA from the attachment" and agreed that the Court should deny PDVSA's cross-motions to dismiss "to the extent [the motions] assert[] FSIA immunity or lack of jurisdiction."  (*E.g.*, Misc. Nos. 19-79 D.I. 57; 21-18 D.I. 52; 22-131 D.I 51; 22-263 D.I. 51; 23-298 D.I. 17; 23-340 D.I. 11; 23-360 D.I. 11; 23-361 D.I. 11; 23-378 D.I. 18; 23-379 D.I. 17; 23-397 D.I. 11)  These stipulations narrow but do not resolve the disputes presented by the creditors' motions and PDVSA's cross-motions.  Specifically, the Venezuela Parties continue to contend that the Court should deny the motions for a writ of attachment and grant the motions to dismiss because PDVSA's property may not be attached to satisfy judgments against Venezuela under Federal Rule of Civil Procedure 69(a) and pursuant to "Delaware alter ego principles."  In the view of the Venezuela Parties, attachment is available based on these authorities only upon proof of fraud or similar injustice, which the judgment creditors have failed to show are present here.  (*See, e.g.*, Misc. No. 19-79 D.I. 53 at 3-14; D.I. 61 at 3-4)

---

[6] The judgment creditors also ask to be named Additional Judgment Creditors in accordance with the Sale Procedures Order (Misc. No. 17-151 D.I. 481) and the license issued to the Court by OFAC on May 1, 2023 (*see, e.g.*, Misc. No. 19-79 D.I. 29-2 at 29-30).  On July 27, 2023, the Court issued a memorandum order setting out the procedures by which a judgment creditor may become an Additional Judgment Creditor.  (*See* Misc. No. 17-151 D.I. 646; *see also id.* D.I. 738) Today's decision conditionally granting certain creditors' writs of attachment moves these creditors further along in a process which may culminate in their being named Additional Judgment Creditors, pursuant to the procedures set out in these other orders.

For the reasons explained in detail below, the Court finds that collateral estoppel precludes the Venezuela Parties from arguing that Delaware alter ego principles apply to the judgment creditors' motions for a writ of attachment against the PDVH shares owned by PDVSA.  Furthermore, even if collateral estoppel did not apply, federal law, not Delaware law, governs the alter ego analysis, and federal law does not require a showing of fraud or injustice.[7]

## I.      The Venezuela Parties Are Collaterally Estopped From Arguing That Delaware Alter Ego Principles Apply To The Writ Of Attachment Motions

Under Third Circuit law, collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).  A party may also be estopped from advancing a position that was already presented and lost in a prior proceeding against a different adversary if the party had a "full and fair" opportunity to litigate the issue in the prior proceeding.  *See Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007).

The Seven Creditors contend that the requirements for collateral estoppel are satisfied here and preclude the Venezuela Parties from arguing that Delaware law applies to the alter ego analysis the Court must undertake in connection with the motions for a writ of attachment. Specifically, the Seven Creditors argue that the issue of "what alter-ego law applies" has been

---

[7] To a great extent, the issues raised in the cross-motions to dismiss are mirror images of issues the Court must resolve in deciding the motions for a writ of attachment.  Thus, the Court will focus its analysis on the motions for a writ of attachment and will not, unless necessary, separately address PDVSA's cross-motions to dismiss.

previously litigated to final judgment in both the *Crystallex* Action and the *OIEG* Actions.  (*See, e.g.*, Misc. Nos. 19-79 D.I. 56 at 2-3; 21-18 D.I. 58 at 2-7)[8]

The Venezuela Parties counter that collateral estoppel does not apply.  In their view, the issue of "whether the Delaware alter-ego requirement applied in attachment proceedings under Rule 69" was never litigated in the *Crystallex* Action or the *OIEG* Actions.  Additionally, even if the requirements for applying collateral estoppel were satisfied, the Venezuela Parties assert that the subsequent "change in the applicable legal context" should allow them to relitigate the issue.  They also contend that application of collateral estoppel would "result in the inequitable administration of the laws."  (*See, e.g.*, Misc. Nos. 19-79 D.I. 62 at 4-6; 21-18 D.I. 53 at 15-18)

The Court agrees with the creditors that each of the collateral estoppel requirements is satisfied.  The Venezuela Parties' arguments against application of collateral estoppel are unpersuasive.

First, the identical issue – whether federal common law, as set out by the Supreme Court in cases including especially *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), or, instead, Delaware law should apply to the alter ego analysis – was litigated in both the *Crystallex* Action and the *OIEG* Actions.  In the *Crystallex* Action, PDVSA contested the Court's jurisdiction and separately challenged the merits of

---

[8] Because the Court has previously held, in connection with denying the Venezuela Parties' motion to quash attachment in the *Crystallex* Action, *see Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *8-11 (D. Del. Jan. 14, 2021), that the Venezuela Parties were collaterally estopped (based on the Court's ruling in *Crystallex I*) from prevailing on their argument that Delaware law governs the alter ego analysis, the Seven Creditors argue here that here the Venezuela Parties are "doubly estopped."  (Tr. at 20-21)  On this view, the Venezuela Parties are collaterally estopped from even arguing that they are *not* collaterally estopped, since the Court has already rejected their earlier effort to evade application of collateral estoppel.  (*See id.*)  It is not necessary for the Court to decide whether it agrees with this contention.

Crystallex's motion for a writ of attachment, which Crystallex filed pursuant to Rule 69(a).

PDVSA's alter ego status was at issue in both PDVSA's challenge to jurisdiction – that is,

whether the Court could exercise jurisdiction over PDVSA as a state instrumentality – and in

PDVSA's challenge on the merits – that is, whether PDVSA's assets could actually be attached

and executed upon to satisfy the judgments against Venezuela. (*See, e.g.*, Misc. No. 17-151 D.I.

26 at 37) (PDVSA arguing that "where, as here, a judgment creditor of a foreign state attempts to

reach the assets of an agency or instrumentality on the theory that it is the alter ego of the state

under *Bancec*, the judgment creditor must satisfy the more restrictive exceptions to execution

immunity set forth in [28 U.S.C.] Section 1610(a)") PDVSA argued that in order to determine if

PDVSA was the alter ego of Venezuela, the Court must undertake an alter ego analysis "in

accordance with Delaware law," which "is crystal-clear that alter ego liability applies only in the

rare circumstance where the corporate form is abused to perpetrate a fraud against the plaintiff."

(*Id.* at 16-18) Crystallex disagreed, insisting the Court must instead apply federal law to analyze

the alter ego question. (*See id.* D.I. 33 at 16 n.40) Thus, in the *Crystallex* Action, PDVSA

litigated the identical issue it seeks to press here of whether Delaware law, or instead federal law,

should apply to the Court's determination of whether PDVSA is Venezuela's alter ego, both for

jurisdiction purposes and for the merits of the attachment motions.

      The Venezuela Parties now attempt to frame the issue to make it seem different than the

one resolved, twice, against them in previous litigation. They argue that in order to attach the

PDVH shares owned by PDVSA, Rule 69 requires application of Delaware law to the alter ego

analysis. (*See, e.g.*, Misc. No. 19-79 D.I. 53 at 3-5) But this is not a different issue; it is merely

a different argument in support of the same position raised previously: that Delaware law should

be used to determine PDVSA's alter ego status for purposes of attaching the PDVH shares owned

by PDVSA.  "'Once an issue is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.'"  *Alevras v. Tacopina*, 226 F. App'x 222, 231 (3d Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)); *see also Jayasundera v. Garcia*, 684 F. App'x 254, 256 (3d Cir. 2017); *Mclaughlin v. Fisher*, 277 F. App'x 207, 213 (3d Cir. 2008).  The Venezuela Parties' argument, even if it is a new argument, cannot prevent the application of collateral estoppel to its already-litigated position.

The Venezuela Parties litigated the identical issue in the *OIEG* Actions as well.  There they argued that Rule 69 required the application of Delaware law to the alter ego analysis, just as they do here.  (*See, e.g.*, Misc. No. 19-290 D.I. 65 at 31-35; *id.* D.I. 69 at 5-6)  Thus, the same issue – which source of alter ego law should the Court use in determining whether the PDVH shares owned by PDVSA may be attached to satisfy judgments against Venezuela – has been litigated previously; in fact, twice.

In the *Crystallex* Action, the Court considered "cases applying state-law alter ego standards" but found them "unpersuasive" and "unhelpful."  *Crystallex I*, 333 F. Supp. 3d at 396 n.13, 405.  The Court concluded instead "it is federal law, not state law, that applies" to "address the circumstances under which an agency or instrumentality of a foreign state may be treated as the sovereign state itself for purposes of either jurisdiction or attachment and execution."  *Id.* at 396 & n.13.  In affirming this Court's grant of a writ of attachment, the Third Circuit held that "so long as PDVSA is Venezuela's alter ego under *Bancec*" – that is, under **federal** law – "the District Court had the power to issue a writ of attachment on that entity's non-immune assets [i.e., assets that meet the exceptions to 28 U.S.C. § 1609] to satisfy the judgment against the country."  *Crystallex II*, 932 F.3d at 139; *see also id.* at 149-50.

9

The Venezuela Parties point to the Court's quotation of Crystallex's representation in *Crystallex I* that "PDVSA may . . . seek to challenge the writ on non-jurisdictional grounds by a motion to quash brought after the writ has issued and before the Court allows the execution process to commence," which the Venezuela Parties treat as a suggestion that the Court did not actually consider the Delaware alter ego issue in connection with "non-jurisdictional grounds," i.e., the merits of Crystallex's motion for a writ of attachment.  (*See, e.g.*, Misc. No. 19-79 D.I. 62 at 5)  The Venezuela Parties are incorrect.  The Court quoted Crystallex's representation in the context of enumerating several "aspects of the parties' dispute [that] remain[ed] unsettled" going forward, *Crystallex I*, 333 F. Supp. 3d at 425, but the source of law applicable to the evaluation of PDVSA's alter ego status was not then "unsettled;" as explained above, the Court had just held that federal law, and not Delaware law, applied.  *See id.* (identifying as unsettled (i) timing of execution of writ, (ii) contours of commercially reasonable procedure, (iii) OFAC licensing issues, and (iv) supplementation of factual record).  The Court's quotation of Crystallex's representation did not indicate that *Crystallex I* considered only jurisdiction; nor did it constitute an invitation to the Venezuela Parties to relitigate the issues that had been raised and adjudicated in connection with their challenges to the merits of Crystallex's motion for a writ of attachment. Accordingly, at a later stage of the *Crystallex* Action (and now several years ago), the Court made clear that "PDVSA's Delaware law challenges to the validity of the writ are barred by the doctrine of collateral estoppel."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *8-11 (D. Del. Jan. 14, 2021).

In the *OIEG* Actions, the Court again adjudicated the issue of whether federal or Delaware alter ego law applies to a judgment creditor's Rule 69(a) motion for a writ of attachment.  Once more, the Court rejected the Venezuela Parties' argument that Delaware law

10

should apply, citing its previous decision in *Crystallex I* and the Third Circuit's affirmance in *Crystallex II*.  *See OIEG I*, 2023 WL 2609248, at *29 ("This Court and the Third Circuit have previously rejected these contentions.").

It is true, as the Venezuela Parties emphasize, that the Third Circuit recently stated in *OIEG II* that it was limiting its review of this Court's decision in *OIEG I* to the "narrow question" of whether the Court properly denied PDVSA **immunity** under the FSIA.  *OIEG II*, 73 F.4th at 165.  The limited scope of the Third Circuit's review, however, does not negate the finality of the full scope of ***this Court's*** ruling in *OIEG I* for purposes of collateral estoppel.  In addition, although the Third Circuit determined that it lacked appellate jurisdiction (at this time) to review some aspects of this Court's decision on the merits of OIEG's attachment motion, *see OIEG II*, 73 F.4th at 163, even "decisions not final for purposes of appealability may nevertheless be sufficiently final to have issue preclusive effect," *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 360 (3d Cir. 1999).  At bottom, the litigation of the Delaware alter ego law issue "has reached such a stage that [the] court sees no really good reason for permitting it to be litigated again."  *Id.*  In other words, the Court finds its prior decisions on this issue to be "sufficiently firm" to be accorded preclusive effect.  *Id.* at 358.

The Venezuela Parties do not dispute that the Court's determination on the source of alter ego law was essential to the grant of the previous judgment creditors' motions for a writ of attachment.  Nor do they argue that they were not fully represented at all stages of the *Crystallex* and the *OIEG* Actions.  Thus, all of the requirements for collateral estoppel are satisfied.

The Venezuela Parties' additional arguments against application of collateral estoppel are unpersuasive.

The Venezuela Parties contend that the Third Circuit's *OIEG II* decision represents an "intervening change in the applicable legal context," thus preventing the application of collateral estoppel.  (*See, e.g.*, Misc. No. 19-79 D.I. 62 at 6)  This contention is based on the Third Circuit's statement in *OIEG II*, 73 F.4th at 176, that "[r]esolution of the immunity issue does not dictate the outcome of the attachment issue."  This Court understands that statement to be referring to the difference between jurisdictional immunity and execution immunity.  *See id.* ("The immunity inquiry used the *Bancec* factors to determine whether a state exercises such extensive control over an instrumentality that it may be considered an 'alter ego' of the state.  The attachment inquiry invoked *Bancec* to evaluate whether PDVSA's property can be attached to pay out a judgment.").  The Third Circuit's holding in *OIEG II*, then, stands for the non-controversial proposition that while the jurisdictional immunity and execution immunity inquiries under the FSIA may both involve an alter ego analysis, they are different inquiries and may lead to different outcomes.  This Court has explicitly recognized this distinction.  *See, e.g.*, *Crystallex I*, 333 F. Supp. 3d at 395 ("Notably, 'the exceptions to attachment immunity are narrower than the exceptions to jurisdictional immunity.  Although there is some overlap between the exceptions to jurisdictional immunity and those for immunity from execution and attachment, there is no escaping the fact that the latter are more narrowly drawn.'") (quoting *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 796 (7th Cir. 2011)).  Because the portion of *OIEG II* on which the Venezuela Parties rely says nothing this Court has not already previously recognized, it follows that *OIEG II* does not represent an "intervening change in the applicable legal context."

The Venezuela Parties wrongly suggest that in *OIEG I* this Court relied on the "premise" that the "Rule 69/Delaware law issue was coterminous with the FSIA immunity issue decided in *Crystallex II*."  (*E.g.*, Misc. No. 19-79 D.I. 62 at 6)  The Court did not rely on such a premise.

Instead, the Court in *OIEG I* properly referred to its findings in *Crystallex I*, in which the Court had considered "cases applying state-law alter ego standards" and yet decided that federal law, not Delaware law, should apply to the alter ego analysis, for purposes of both jurisdiction over PDVSA and as to the merits of Crystallex's Rule 69(a) motion to attach PDVSA's shares in PDVH. *See, e.g.*, *Crystallex I*, 333 F. Supp. 3d at 396, 405.

The Venezuela Parties' contention that applying collateral estoppel here would lead to "inequitable administration of the laws" is also unpersuasive. (*See, e.g.*, Misc. No. 19-79 D.I. 62 at 6) This argument is essentially a rehash of the Venezuela Parties' view that the issue of which law should govern the alter ego analysis was not fully litigated, an argument the Court has rejected (as explained above). The Court agrees, instead, with the Seven Creditors that the Venezuela Parties had a full and fair opportunity to litigate any potential defenses to attachment in the *Crystallex* and *OIEG* Actions, and allowing them to relitigate the applicable law issue once more could not only create further delays and waste judicial resources but might also subject the Seven Creditors to a different legal standard than the Court applied in the *Crystallex* and *OIEG* Actions, potentially leading to inconsistent decisions. (*See, e.g.*, Misc. No. 21-18 D.I. 58 at 6-7) Hence, a risk of "inequitable administration of the laws" would arise if the Court were to endorse the Venezuela Parties' position rather than reject it.

For the foregoing reasons, the Court finds that collateral estoppel precludes the Venezuela Parties from arguing that Delaware alter ego principles apply to the judgment creditors' motions for a writ of attachment.

## II.    In Any Event, Rule 69(a) Does Not Require Application Of Delaware Law

In the alternative, even if the Venezuela Parties were not collaterally estopped from pressing the issue, considering the issue de novo the Court again concludes that federal common

law, rather than Delaware law, governs the alter ego inquiry the Court must undertake in connection with the Seven Creditors' motions for a writ of attachment.

Federal Rule of Civil Procedure 69(a) states: "The ***procedure*** on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, ***but a federal statute governs to the extent it applies***" (emphasis added). Thus, when no federal statute governs, the Court looks to "the ***procedure*** of the state where the court is located." Rule 69(a) does not, however, require that the Court apply the ***substantive*** law of the forum state. Instead, the proper approach is to apply federal common law, as reflected most particularly in *Bancec*, to the alter ego analysis, when such an analysis is required to resolve a motion brought pursuant to Rule 69 against a state instrumentality.

As the Supreme Court itself stated in *Bancec*, 462 U.S. at 622 n.11, the determination of a sovereign instrumentality's alter ego status is a matter bearing on the nation's foreign relations that "should not be left to divergent and perhaps parochial state interpretations." Moreover, the pertinent alter ego relationship is that "between Venezuela and PDVSA, neither of which is a Delaware corporation." *Crystallex I*, 333 F. Supp. 3d at 396 n.13. In the context of Rule 69, even though the Court looks to state law to determine the procedure to be followed, the Court does not need to assimilate state practices "that may be inconsistent with the federal policy of affording judgment creditors the right to a writ of execution to enforce money judgments in federal courts." *United States v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995); *see also Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 480 n.18 (D.C. Cir. 2016) (expressing concerns about applying state law in connection with Rule 69). Thus, applying federal common

law here is consonant with the purpose of "furtherance of federal law, giving effect to rules entitling parties to enforce federal judgments in federal courts." *Harkins*, 45 F.3d at 833.[9]

In addition to pointing to the language of Rule 69, the Venezuela Parties throw up a multitude of other bases that, they insist, compel the conclusion that "Delaware law governs the proceedings to execute on a judgment." (Misc. No. 19-79 D.I. 53 at 4) In the Court's view, none of these contentions has merit.

The Venezuela Parties argue that Delaware law must determine "what foreign state property is subject to execution" and cite numerous cases as support. (*E.g.*, Misc. No. 19-79 D.I. 53 at 4) The cases relied on by the Venezuela Parties, however, do not establish such a broad conclusion. Instead, the Venezuela Parties' authorities apply state law to determine what ***types*** of assets and interests may be attached. *See, e.g.*, *Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995) (applying Pennsylvania law to determine whether interest in spendthrift trust was subject to attachment); *United States v. Miller*, 229 F.2d 839, 840-41 (3d Cir. 1956) (applying Pennsylvania law to determine whether future wage was subject to garnishment); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130-31 (9th Cir. 2010) (applying California law to determine whether right to future payment was subject to execution); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) (applying New York law to determine that any property "which could be assigned or transferred" was subject to attachment); *Pac. Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215, 1219 (7th

---

[9] In this regard, the Court shares the concern expressed by the Seven Creditors that applying state choice of law principles to determine the substantive law to apply to the alter ego analysis might possibly result in the unjust outcome that the law of Venezuela (or, more generally, the law of the debtor's home forum) governs. (*See* Tr. at 29-30) In the context of a foreign sovereign judgment debtor, this would give rise to the prospect of the debtor shaping or altering its laws to permit it to evade collection efforts, in the knowledge that U.S. courts might be required to apply such law notwithstanding their inequitable impact.

15

Cir. 1991) (applying Illinois law to determine whether corpus of trust was subject to execution).

There is no dispute here that the type of asset involved, PDVSA's shares in PDVH, a Delaware

corporation, is subject to attachment under Delaware law. *See* 10 *Del. C.* § 5031 (permitting

garnishment); 8 *Del. C.* § 324 (permitting attachment of shares).

      The Venezuela Parties claim that numerous cases have decided that, in considering a

motion brought under Rule 69(a), a federal court must follow the law of the forum state to decide

whether the assets of a party that is not the judgment debtor may be reached to satisfy the debts

of a debtor. (*See, e.g.*, Misc. No. 19-79 D.I. 53 at 5-6)  None of the cases relied on by the

Venezuela Parties, however, actually addresses whether the substantive law of the forum state is

to be used for this purpose.  (*See, e.g.*, Misc. No. 21-18 D.I. 53 at 6-7)  Rather, the Venezuela

Parties' cases apply state procedures to distinctly different situations, such as amending judgment

or initiating special proceedings so that creditors could seek to reach the assets of a party that is

not the subject of a judgment.  *See, e.g.*, *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394

F.3d 1143, 1148-49 (9th Cir. 2004) (applying California state procedure for amending judgment);

*Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 F. App'x 31, 34-35 (Fed. Cir. 2007) (same); *Trust v.*

*Kummerfeld*, 153 F. App'x 761, 762 (2d Cir. 2005) (applying New York state procedure for

initiating special proceeding); *Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 953

(E.D. Mich. 1998) (citing Michigan "procedural rules" and "procedural guidelines" governing

submission of evidence relating to piercing corporate veil); *Flip Side Prods., Inc. v. Jam Prods.,*

*Ltd.*, 1990 WL 186777, at *2 (N.D. Ill. Nov. 8, 1990) (allowing "supplementary proceeding"

under Illinois law to collect on judgment).  Rather, courts have treated the alter ego inquiry as

substantive and engaged in a choice-of-law analysis to determine which forum's substantive law

to apply; they do not automatically apply the law of the state in which the district court happens

to be located.  *See, e.g.*, *Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 2021 WL 7448611, at *10-13 (N.D. Cal. Oct. 7, 2021) (applying California choice-of-law rules to determine whether California or Monaco law governed alter-ego analysis); *First Horizon Bank v. Moriarty-Gentile*, 2015 WL 8490982, at *6 (E.D.N.Y. Dec. 10, 2015) (California law governed alter ego analysis under New York choice-of-law rules).[10]

Only one case cited by the Venezuela Parties actually considers the determination of a sovereign instrumentality's alter ego status in the context of a motion for a writ of attachment filed under Rule 69(a).  That case is *Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d 1277 (11th Cir. 1999), and it does not help the Venezuela Parties.  In *Alejandre*, the Eleventh Circuit applied "principles of Florida garnishment law" to determine (1) what property rights of the garnishee were subject to attachment; and (2) who carried the burden of proof to establish alter ego status.  *See id.* at 1285-86.  However, when the Court then turned to the substantive alter ego analysis, it applied federal common law – and, specifically, the factors outlined in *Bancec*.  *See id.* at 1286-88.[11]  *Alejandre*, thus, does not support the application of Delaware alter ego law in the circumstances presented here.

---

[10] The Venezuela Parties' reliance on *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107 (2022), and 28 U.S.C. § 1606 is misplaced.  (*See, e.g.*, Misc. Nos. 19-79 D.I. 62 at 2; 21-18 D.I 53 at 7)  *Cassirer* addresses the application of choice-of-law rules for primary liability of non-federal claims against a sovereign instrumentality.  The judgment enforcement actions here, however, involve "garnishment, seeking only to establish secondary liability (by attaching certain specified property), rather than an action seeking to impose primary liability on PDVSA." *Crystallex I*, 333 F. Supp. 3d at 394.

[11] During oral argument, counsel for the Venezuela Parties argued that because the creditor in *Alejandre* did not get past the *Bancec* alter ego analysis, the court did not reach the question of what property could actually be attached and executed.  (*See* Tr. at 47)  Even so, there is no indication that the *Alejandre* court would have applied Florida law to conduct a second alter ego inquiry had it found the *Bancec* factors were satisfied.

Even if the Court were persuaded to apply a choice-of-law analysis (rather than apply *Bancec* to resolve the alter ego question), and even if it applied Delaware choice-of-law rules, it is not clear that this would result in the application of Delaware alter ego law to assess the relationship between Venezuela, a foreign sovereign, and PDVSA, a non-Delaware corporation. In their briefs, the Venezuela Parties do not address what source of substantive law should govern the alter ego analysis if Delaware's choice-of-law rules apply.[12]  The Seven Creditors contend that if Delaware's choice-of-law rules apply here, then this analysis "would conclude – consistent with the Supremacy Clause of the United States Constitution – that *Bancec* applies." (Misc. No. 21-18 D.I. 58 at 14-15)  The Venezuela Parties did not respond to this contention in their briefing.  They have, therefore, forfeited the opportunity to seek to persuade the Court that, if it were to reach the point in the analysis in which it had to employ Delaware choice-of-law rules, then the result would be the application of Delaware alter ego law.  In any case, even assuming the Venezuela Parties still retain the right to be heard on these issues, their position lacks merit.

The Venezuela Parties' contention that *Bancec* applies only to the issue of jurisdiction, to which Rule 69(a) has no relevance, is incorrect.  (*See, e.g.*, Misc. No. 21-18 D.I. 53 at 10)  While jurisdictional immunity and execution immunity are distinct issues governed by different provisions of the FSIA, *see, e.g.*, *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142

---

[12] During oral argument, counsel for the Venezuela Parties argued that the Delaware Supreme Court's decision in *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684 (Del. 1959), "is dispositive of" the choice-of-law issue.  (Tr. at 54)  *Buechner*, however, did not address choice of law; nor did it otherwise explain why Delaware law should be applied to the issue of alter ego presented here.  More importantly, *Buechner* does not involve the attachment of assets owned by a sovereign instrumentality under circumstances in which the presumption of separateness has already been rebutted in connection with determining jurisdictional immunity.

(2014) (distinguishing jurisdictional immunity and execution immunity); *Peterson*, 627 F.3d at 1125 ("[S]overeign immunity from execution does not defeat a court's jurisdiction."); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 800 (7th Cir. 2011) (same), the Court applied the *Bancec* alter ego analysis to both issues, *see, e.g.*, *Crystallex I*, 333 F. Supp. 3d at 415 ("[B]ecause the Court concludes that PDVSA is to be treated as Venezuela's alter ego for purposes of jurisdictional immunity, PDVSA must also be treated as Venezuela's alter ego for purposes of execution immunity."), and the Third Circuit affirmed, *see OIEG II*, 73 F.4th at 175 ("The immunity inquiry used the *Bancec* factors to determine whether a state exercises such extensive control over an instrumentality that it may be considered an 'alter ego' of the state.  The attachment inquiry invoked *Bancec* to evaluate whether PDVSA's property can be attached to pay out a judgment.").[13]

The Venezuela Parties further assert that "[u]nder Delaware law, [the creditors] may execute against the PDVH shares, which are owned by PDVSA, ***only*** by piercing PDVSA's corporate veil."  (*See, e.g.*, Misc. No. 19-79 D.I. 53 at 6) (emphasis added)  They also insist that applying federal common law to the determination of whether PDVSA is Venezuela's alter ego somehow "supplant[s] Delaware law."  (*E.g.*, Misc. No. 19-79 D.I. 53 at 8)  These are just restatements of arguments the Court has already rejected.  Delaware law allows "veil piercing"

---

[13] Other courts have also applied *Bancec* to issues of attachment and execution (and not just jurisdiction).  *See, e.g.*, *Alejandre*, 183 F.3d at 1287 n.23 ("[T]he *Bancec* presumption of separate juridical status applies for purposes of determining both whether an instrumentality can be held responsible for the debts of its related foreign government and whether the instrumentality retains its immunity from execution."); *LNC Investments, Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y. 2000) (applying New York execution procedures in context of Rule 69(a) motion and applying *Bancec* to determination of "whether the Central Bank is an independent corporate entity and, if so, whether the Central Bank can be held liable for Nicaragua's default").

where, for example, a parent and subsidiary are alter egos, *see Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021).  The Venezuela Parties' contentions, therefore, lack merit.

In sum, even assuming collateral estoppel does not preclude the Venezuela Parties from prevailing on their argument that Delaware law applies to the alter ego analysis, the Court finds that federal common law, as outlined in *Bancec*, rather than Delaware law, governs whether PDVSA is the alter ego of Venezuela, for purposes of determining whether, in this litigation, PDVSA's property (i.e., its shares of PDVH) may be attached to satisfy the Seven Creditors' judgments against Venezuela.[14]  This is the same conclusion the Court has arrived at before. And, as all parties here recognize, the Court has previously determined, on several occasions, that application of *Bancec* here leads to the conclusion that PDVSA is, indeed, the alter ego of Venezuela – a finding the Third Circuit has twice affirmed.

### *LOVATI* ACTION

The Court now addresses an issue that has arisen in one judgment creditor's action, Misc. No. 23-340, the *Lovati* Action.  In the *Lovati* Action, the Court entered an order on August 23, 2023, directing the parties to include in their forthcoming briefing on the motions for a writ of attachment and to dismiss a discussion "of whether the creditor has filed an Attached Judgment Statement (*see* Misc. No. 17-151 D.I. 481 para. 32; D.I. 652; D.I. 654) and what impact, if any, the creditor's action or inaction in that regard should have on how this case proceeds."  (Misc.

---

[14] Having concluded that federal common law, rather than Delaware law, should be applied to the alter ego analysis, the Court need not reach the issues of whether the Delaware alter ego principles require proof of fraud or similar injustice and whether the judgment creditors here have proved fraud or similar injustice.  Also, the Court will refrain from addressing whether the Venezuela Parties, in addition to being collaterally estopped, are also judicially estopped from arguing for application of Delaware alter ego law (as two creditors contend).  (*See* Misc. Nos. 21-18 D.I. 58 at 7; 23-360 D.I. 21 at 4-5)

No. 23-340 D.I. 12)  The next day, August 24, the *Lovati* creditors filed an Attached Judgment

Statement.  (Misc. Nos. 17-151 D.I. 695; 23-340 D.I. 13)  Several days later, on August 28, the

*Lovati* creditors filed a motion to extend the deadline for submission of the Attached Judgment

Statement, from August 14 to August 24 (Misc. No. 23-340 D.I. 16), which the Venezuela Parties

oppose (*id.* D.I. 20 at 5 n.3).  In subsequent briefing, the parties have provided the Court their

reasoning for whether the Court should excuse the *Lovati* creditors' late filing of the Attached

Judgment Statement.  (*Id.* D.I. 16 at 1-6; D.I. 20 at 5-6; D.I. 25 at 1-3)

　　　The Court finds the *Lovati* creditors' explanations for the delay – that they were not

"parties to the *Crystallex* proceedings, and did not receive service of the Sale Procedures Order

or the August 7 Letter, and were not aware of the [Attached Judgment Statement] Deadline" (D.I.

16 at 4) – unsatisfactory.  That the *Lovati* creditors were well aware of the *Crystallex* Action is

evident from their extensive discussion of the case in their opening brief on the motion for a writ

of attachment, a brief which they filed on August 2, well before the August 14 deadline.  The

*Lovati* creditors filed their enforcement action in this District in July 2023; it is reasonable to

conclude they filed here because of their knowledge of the ongoing *Crystallex* Action and the

Court's adoption of the Sale Procedures Order.  It is difficult, then, to believe that the *Lovati*

creditors were not monitoring the docket of the *Crystallex* Action, despite not being parties to it.

　　　Nevertheless, the Venezuela Parties do not assert, nor does the Court independently find,

that the *Lovati* creditors' 10-day delay in filing the Attached Judgment Statement resulted in any

prejudice to the Venezuela Parties, the other Sale Process Parties, the Special Master, the Court,

or any other relevant entity.  The *Lovati* creditors' delay did not slow down briefing or resolution

of the motions relating to them.  The Step 5 and Step 7 deadlines remain, even today, several

months away.  Moreover, the *Lovati* creditors moved promptly to correct their oversight, filing

21

the Attached Judgment Statement the day after the Court called out their omission and moving for an extension (to make their filing timely) just four days later.  Thus, the Court will grant the *Lovati* creditors' motion to extend the deadline for submission of the Attached Judgment Statement.  (Misc. No. 23-340 D.I. 16)

## CONCLUSION

For the foregoing reasons, the Court will grant the judgment creditors' motions for a writ of attachment *fieri facias* (Misc. Nos. 19-79 D.I. 5; 21-18 D.I. 47; 22-131 D.I. 46; 22-263 D.I. 46; 23-298 D.I. 8; 23-340 D.I. 2; 23-360 D.I. 3; 23-361 D.I. 3; 23-378 D.I. 2; 23-379 D.I. 2; 23-397 D.I. 2) and will deny PDVSA's motions to dismiss (Misc. Nos. 19-79 D.I. 61; 21-18 D.I. 56; 22-131 D.I. 55; 22-263 D.I. 55; 23-298 D.I. 23; 23-340 D.I. 18; 23-360 D.I. 16; 23-361 D.I. 16; 23-378 D.I. 25; 23-379 D.I. 24; 23-397 D.I. 15).  The Court will also grant the *Lovati* creditors' motion to extend the time to file their Attached Judgment Statement.  (Misc. No. 23-340 D.I. 16) An appropriate order follows.