**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---

| | |
|---|---|
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Misc. No. 19-79-LPS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., and CONTRARIAN DOME DU GOUTER MASTER FUND, LP, <br><br> Plaintiffs, <br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Misc. No. 21-18-LPS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., EMMA 1 MASTER FUND, L.P., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC, <br><br> Plaintiffs, <br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Misc. No. 22-131-LPS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

CONTRARIAN CAPITAL MANAGEMENT,
L.L.C., CONTRARIAN CAPITAL FUND I, L.P.,
CONTRARIAN DOME DU GOUTER MASTER
FUND, LP, CONTRARIAN CAPITAL SENIOR
SECURED, L.P., CONTRARIAN EM II, LP,
CONTRARIAN EMERGING MARKETS, L.P.,
BOSTON PATRIOT SUMMER ST LLC,
POLONIUS HOLDINGS, LLC, CONTRARIAN
FUNDS, L.L.C., EMMA 1 MASTER FUND, L.P.,
and E1 SP, A SEGREGATED ACCOUNT OF
EMAP SPC,

        Plaintiffs,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Misc. No. 22-263-LPS

---

VALORES MUNDIALES, S.L. and
CONSORCIO ANDINO, S.L.,

        Plaintiffs,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Misc. No. 23-298-LPS

---

RUDI LOVATI and ALESSANDRO
LUCIBELLO PIANI,

        Plaintiffs,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Misc. No. 23-340-LPS

---

PHARO GAIA FUND LTD. and PHARO
MACRO FUND LTD.,

        Plaintiffs,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Misc. No. 23-360-LPS

PHARO GAIA FUND LTD., PHARO MACRO
FUND LTD. and PHARO TRADING FUND,
LTD.,

    Plaintiffs,

   v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

    Defendant.

Misc. No. 23-361-LPS

---

GRAMERCY DISTRESSED OPPORTUNITY
FUND LLC,

    Plaintiff,

   v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

    Defendant.

Misc. No. 23-378-LPS

---

GRAMERCY DISTRESSED OPPORTUNITY
FUND LLC,

    Plaintiff,

   v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

    Defendant.

Misc. No. 23-379-LPS

---

SAINT-GOBAIN PERFORMANCE PLASTICS
EUROPE,

    Plaintiff,

   v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

    Defendant.

Misc. No. 23-397-LPS

**BRIEF OF THE VENEZUELA PARTIES IN SUPPORT OF THEIR MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL**

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com
cannataro@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
Aubre G. Dean
Allesandra D. Tyler
CURTIS, MALLET PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com
adean@curtis.com
atyler@curtis.com

Samuel T. Hirzel, II (#4415)
Brendan Patrick McDonnell (#7086)
HEYMAN ENERIO GATTUSO & HIRZEL, LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law
bmcdonnell@hegh.law

*Attorneys for Intervenor Petróleos de Venezuela, S.A. in the Contrarian, Lovati, Pharo Gaia, Gramercy, and Saint-Gobain Cases*

Claire A. DeLelle
Nicole Erb
Benedict S. Bernstein
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20003
(202) 626-3600
claire.delelle@whitecase.com
nerb@whitecase.com
benedict.bernstein@whitecase.com


Dated:  November 13, 2023

Samuel T. Hirzel, II (#4415)
Brendan Patrick McDonnell (#7086)
HEYMAN ENERIO GATTUSO & HIRZEL, LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law
bmcdonnell@hegh.law

*Attorneys for Intervenor Petróleos de
Venezuela, S.A. in the Tidewater and Valores
Cases*

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     NATURE AND STAGE OF PROCEEDINGS ................................................................1

II.    SUMMARY OF ARGUMENT ................................................................................2

III.    ARGUMENT................................................................................................4

       A.    An Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation........................................................................................4

       B.    There Is Substantial Ground for Difference of Opinion. .........................................8

       C.    The Order Involves a Controlling Question of Law. .............................................14

IV.    CONCLUSION.............................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
    C.A. No. 1:13-CV-2382, 2013 WL 6506570 (M.D. Pa. Dec. 12, 2013) ...................................4

*Alejandre v. Telefonica Larga Distancia, de P.R., Inc.*,
    183 F.3d 1277 (11th Cir. 1999) ...................................13

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
    39 F. Supp. 3d 516 (S.D.N.Y. 2014) ...................................11

*Bautista v. ABC Corp.*,
    No. 19-CV-3963-LTS, 2023 WL 5917636 (S.D.N.Y. Sept. 11, 2023) ...................................12

*In re Cargill Meat Sols. Wage & Hour Litig.*,
    No. 3:06-CV-00513, 2008 WL 11366373 (M.D. Pa. July 11, 2008) ...................................19

*Chase Manhattan Bank v. Iridium Afr. Corp.*,
    324 F. Supp. 2d 540 (D. Del. 2004) ...................................7

*Chi., R.I. & P. Ry. Co. v. Sturm*,
    174 U.S. 710 (1899) ...................................10

*Christiansen v. Mech. Contractors Bid Depository*,
    404 F.2d 324 (10th Cir. 1968) ...................................11

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) ...................................14

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
    522 F. Supp. 3d 107 (M.D. Pa. 2021) ...................................17

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    24 F.4th 242 (3d Cir. 2022) ...................................15, 18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018) ...................................5, 15

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ...................................5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    C.A. No. 17-MC-151-LPS, 2021 WL 129803 (D. Del. Jan. 14, 2021) ...................................7

*Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*,
    C.A. No. 15-1082-LPS, 2016 WL 7440471 (D. Del. Dec. 27, 2016) ...................................16, 19

*Dexia Credit Local v. Rogan*,
    629 F.3d 612 (7th Cir. 2010) ...............................................................11

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994)...............................................................................9

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007).................................................................12

*FG Hemisphere Assocs., LLC v. Republique du Congo*,
    455 F.3d 575 (5th Cir. 2006) ...............................................................13

*Garza v. Citigroup, Inc.*,
    C.A. No. 15-537-SLR, 2016 WL 50327 (D. Del. Jan. 4, 2016) .................8

*Huron Holding Corp. v. Lincoln Mine Operating Co.*,
    312 U.S. 183 (1941)........................................................................10, 14

*In re JRV Grp. USA L.P.*,
    No. 19-11095 (KBO), 2022 WL 3646288 (D. Del. Aug. 24, 2022).........4

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974) (en banc).........................................4, 15, 16

*LM Gen. Ins. Co. v. LeBrun*,
    C.A. No. 19-2144-KSM, 2020 WL 7770233 (E.D. Pa. Dec. 30, 2020), order
    amended on reconsideration, 2021 WL 322858 (E.D. Pa. Jan. 29, 2021)..............16

*Marcelle v. City of Allentown*,
    C.A. No. 07-CV-4376, 2010 WL 3606405 (E.D. Pa. Sept. 16, 2010)....................17

*Milbert v. Bison Lab's, Inc.*,
    260 F.2d 431 (3d Cir. 1958).................................................................18

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)...............................................................................9

*Obasi Inv. LTD v. Tibet Pharms., Inc.*,
    931 F.3d 179 (3d Cir. 2019).................................................................8

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
    73 F.4th 157 (3d Cir. 2023)  ...................................................1, 5, 9, 18

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) .............................................................12

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .............................................................3, 8

*Republic of Argentina v. NML Capital, Ltd.*,
573 U.S. 134 (2014)..............................................................................................12

*Schreiber v. Kellogg*,
50 F.3d 264 (3d Cir. 1995).................................................................................3, 10

*Supporters to Oppose Pollution, Inc. v. Heritage Grp.*,
973 F.2d 1320 (7th Cir. 1992) ...............................................................................11

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
Nos. MC 19-79-LPS et al., 2023 WL 7182179 (D. Del. Nov. 1, 2023) .......................... passim

*Tidler v. Eli Lilly & Co.*,
851 F.2d 418 (D.C. Cir. 1988).................................................................................14

*Ungar v. Dunkin' Donuts of Am., Inc.*,
531 F.2d 1211 (3d Cir. 1976)...........................................................................15, 17

*United States v. Miller*,
229 F.2d 839 (3d Cir. 1956) ...................................................................................14

*Wright v. Elton Corp.*,
C.A. No. 17-286-JFB, 2023 WL 2563178 (D. Del. Mar. 17, 2023).................................8

**STATE CASES**

*Bramble Transp., Inc. v. Sam Senter Sales, Inc.*,
294 A.2d 97 (Del. Super. Ct. 1971), aff'd, 294 A.2d 104 (Del. 1972) ..................................11

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
154 A.2d 684 (Del. 1959) ...........................................................................11, 13, 14

*Burge v. Fid. Bond & Mortg. Co.*,
648 A.2d 414 (Del. 1994) ........................................................................................7

*Kingsland Holding, Inc. v. Bracco*,
C.A. No. 14817, 1996 WL 104257 (Del. Ch. Mar. 5, 1996)...........................................10, 14

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999)..................................................................................5

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ...................................................................................... passim

28 U.S.C. § 1606........................................................................................3, 13, 16

**FEDERAL RULES**

Fed. R. Civ. P. 1 ...................................................................................................3, 12

Fed. R. Civ. P. 69 ................................................................................................. passim

**STATE STATUTES**

8 Del. C. § 324(a)...................................................................................................7, 10

**OTHER AUTHORITIES**

Ana Vanessa Herrero and Samantha Schmidt, *Venezuela issues arrest warrant against opposition leader Juan Guaidó*, Wash. Post (Oct. 5, 2023) ......................................19

16 Charles Alan Wright, et al., Federal Practice & Procedure Jurisdiction § 3930 (3d ed.) ..................................................................................................................9

*Ministerio Público emitió una orden de captura contra Juan Guaidó y solicitará alerta roja de Interpol,* El Nacional (Oct. 5, 2023), https://www.elnacional.com/venezuela/politica/ministerio-publico-emitio-una-orden-de-captura-a-juan-guaido/...............................................................................19

Press Release, U.S. Dep't of State, U.S. Recognition of Venezuela's 2015 National Assembly and Interim President Guaidó (Jan. 4, 2022), available at https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-interim-president-guaido/; ...........................................................................19

Defendant the Bolivarian Republic of Venezuela (the "Republic") and Intervenor Petróleos de Venezuela, S.A. ("PDVSA," and together, the "Venezuela Parties") respectfully request that the Court certify for interlocutory appeal its November 1, 2023 Memorandum Opinion and Order (the "November 1 Order") granting the Seven Creditors'[1] attachment motions and denying PDVSA's motions to dismiss.

## I.     NATURE AND STAGE OF PROCEEDINGS

The Seven Creditors filed motions for writs of attachment *fieri facias* against shares of the PDV Holding, Inc. ("PDVH") owned by PDVSA.  In each of the actions, the Republic opposed the attachment motions and PDVSA intervened and filed motions to dismiss.  The Court heard oral argument on the motions on September 12, 2023.

In its November 1 Order, the Court granted the attachment motions and denied PDVSA's motions to dismiss.  The Court concluded that only federal common law, and not Delaware law, supplied the relevant legal framework to determine whether PDVSA was the alter ego of the Republic for purposes of determining whether a writ of attachment should issue against PDVSA's property to satisfy judgments against the Republic.  The Court relied on the same conclusion in denying the motion to quash the writ of attachment in the *Crystallex* case, which is the genesis of the ongoing sale process and the source of the Court's collateral estoppel ruling, and in its opinion resolving the alter ego allegations of OIEG and five other creditors of the Republic.  Subsequently, the Third Circuit plainly stated that its resolution of jurisdictional immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* — which relies on a *Bancec* analysis — is distinct from an analysis of the propriety of an attachment under Rule 69.  *See OI European*

---

[1]     This term is used as defined in the November 1 Order.  *See Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, Nos. MC 19-79-LPS et al., 2023 WL 7182179, at *1 n.1 (D. Del. Nov. 1, 2023).

*Grp. B.V. v. Bolivarian Republic of Venezuela* ("*OIEG II*"), 73 F.4th 157, 175-76 (3d Cir. 2023) (stating that "[r]esolution of the immunity issue does not dictate the outcome of the attachment issue").

*Fourteen* creditors' actual or conditional attachments, claimed to secure judgments of over $8 billion, depend on this Court's Rule 69 decision being correct.  Resolving the propriety of this aspect of those attachments before the sale process is run — which the Venezuela Parties intend to do by seeking expedited appellate review so as not to cause delay in the sale process — is a far more efficient course than having to unwind and re-run it should the Third Circuit agree with the Venezuela Parties that creditors of the Republic must satisfy Delaware law before obtaining an attachment on the PDV Holding, Inc. ("PDVH") shares.  These considerations counsel strongly in favor of certification for interlocutory appeal under 28 U.S.C. § 1292(b).

## II.   SUMMARY OF ARGUMENT

1.      The Court should certify its November 1 Order for interlocutory appeal because each of the factors in 28 U.S.C. § 1292(b) has been satisfied here.  *First*, "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Seeking appellate review at this juncture will provide clarity on the applicability of Delaware alter ego law under Rule 69(a) — the question of law at the center of this litigation — and create efficiencies for both the Court and the parties without disrupting or delaying the sale process.   By contrast, without immediate appellate review of this threshold question, the uncertainty created in the sale process may jeopardize that process by adversely affecting bidder behavior and potentially requiring a new sale process post-appeal.

2.      *Second*, there is "substantial ground for difference of opinion" as to the question of law of whether the Court should apply Delaware law or federal common law in analyzing whether

PDVSA is the alter ego of the Republic for purposes of attachment of PDVSA's property.  *See* 28 U.S.C. § 1292(b).  No binding precedent from the Third Circuit directly addresses this specific question.  In its November 1 Order, the Court broke new ground by interpreting Rule 69(a) as identifying a narrow set of "procedural" questions to which state law applies and instead applying federal common law to "substantive" questions, though the Third Circuit previously applied state law under Rule 69(a) to the plainly substantive question of "whether [the plaintiff] may execute on [defendant]'s interest in [a] trust."  *Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995).  Nor can this interpretation of Rule 69 be explained by the fact that the Republic is a foreign sovereign since Rule 69 applies equally regardless of sovereign status.  *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in *all* civil actions and proceedings in the United States district courts" (emphasis added), apart from a handful of exceptions not relevant here); *see also* 28 U.S.C. § 1606 (a foreign state that is not immune should be treated the same way as "a private individual under like circumstances").  At the very least, "reasonable jurists might disagree on [this] issue's resolution."  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

3.      *Third*, the November 1 Order "involves a controlling question of law."  28 U.S.C. § 1292(b).  On appeal, if the Third Circuit resolved the legal question of whether Delaware law or federal common law applies here in the Venezuela Parties' favor, this would require reversal of the November 1 Order.  Though the Order alternatively held that the Venezuela Parties are collaterally estopped from arguing that Delaware alter ego principles apply to the present attachment motions, if the Third Circuit were to agree with Venezuela Parties on the question of law presented here, this would fundamentally undermine this Court's prior, non-final holdings in *Crystallex* and *OIEG* which formed the basis for the collateral-estoppel holding in the November 1 Order.

III.     <u>ARGUMENT</u>

Under 28 U.S.C. § 1292(b), courts weighing a motion to certify a question for interlocutory appeal consider three factors:  (1) whether "if appealed immediately [the Third Circuit's ruling may] 'materially advance the ultimate termination of the litigation'"; (2) whether there is "substantial ground for difference of opinion" as to a question of law; and (3) whether the question of law involved is "controlling."  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc) (citation omitted).  Section 1292(b) is regularly used to permit an interlocutory appeal in order to "avoid[] . . . harm to a party . . . from a possibly erroneous interlocutory order" and to "avoid[] . . . possibly wasted trial time and litigation expense."  *Id.* at 756.  All three factors weigh in favor of certification here.

A.     **An Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation.**

The first Section 1292(b) factor is satisfied here because "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). This factor is met where the appeal would "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *In re JRV Grp. USA L.P.*, No. 19-11095 (KBO), 2022 WL 3646288, at *6 (D. Del. Aug. 24, 2022) (cleaned up).  This element does not require the Venezuela Parties to establish that an appeal would *guarantee* termination of the litigation, but only that "an immediate appeal *may* materially advance the termination of the litigation."  *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, C.A. No. 1:13-CV-2382, 2013 WL 6506570, at *3 (M.D. Pa. Dec. 12, 2013) (emphasis in original).

Here, an interlocutory appeal of the November 1 Order may advance the ultimate termination of the litigation (both the Seven Creditors' litigation and the larger *Crystallex* sale process) because, should the Third Circuit conclude that Delaware law applies, the sale process is

likely to be overturned, as it would be premised on the mistaken legal conclusion (in *Crystallex*, *OIEG*, and the Seven Creditors' cases) that the *Bancec* standard was sufficient, under Rule 69, to attach and execute upon the shares of PDVH to satisfy creditors of the Republic.  As the Court is aware, the answer to which standard applies is case dispositive given that Delaware law requires a finding of fraud or similar injustice to pierce the corporate veil.  *See Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).[2]  This Court has previously found — at least as far as Crystallex is concerned — that there was no fraud or similar injustice sufficient to justify piercing the veil between PDVSA and the Republic.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 403 (D. Del. 2018) (finding Crystallex failed to establish "that the Republic abused PDVSA's corporate form to perpetrate a fraud or injustice resulting in harm to Crystallex").  And the question remains unresolved by the Third Circuit, as made plain its most recent opinion in the creditor cases, in which it stated: "[r]esolution of the [*Bancec*] immunity issue does not dictate the outcome of the attachment issue." *OIEG II*, 73 F.4th at 176.  There is no good reason to avoid obtaining certainty on this threshold, dispositive issue now, rather than potentially wasting the resources of the Court, parties, creditors, and bidders on a sale process that will be overturned and perhaps re-designed and re-run for creditors of *PDVSA* only.[3]

By contrast, the Court of Appeals' guidance on the applicability of Delaware alter ego law under Rule 69(a) — the controlling question of law at the center of the current litigation — will

---

[2]    Unlike Delaware law, *Bancec* calls for a "disjunctive" test.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 140 (3d Cir. 2019) ("*Bancec* establishes a disjunctive test for when the separate identities of sovereign and instrumentality should be disregarded: when there is extensive control, and when not disregarding separate identities would work a fraud or injustice." (cleaned up)).

[3]    PDVSA reserves all rights and defenses with respect to alleged creditors of PDVSA.

create efficiencies for the Court, the parties, and the sale process in general. There are substantial legal questions here about the propriety of billions of dollars' worth of attachments against the shares of a corporation owned by PDVSA in order to satisfy judgments against the Republic. The Third Circuit should resolve those now.

Waiting until after the sale process to seek appellate review also will cast a pall of uncertainty over the sale process that threatens to materially impact bidder behavior and, potentially, require a new sale process post-appeal. *First*, as the Court is well aware, Delaware law requires the sale of only so many of the shares as are necessary to satisfy the attached judgments. Given the size of the judgments for which creditors of the Republic — the Seven Creditors, the six *OIEG* creditors, and Crystallex — seek execution through the sale process, it is likely that the only bids received in the course of the sale process are for complete or majority ownership of PDVH. To the extent that the Third Circuit disagrees with this Court's decision to apply federal common law to the alter ego inquiry for purposes of attachment, the sale process itself may need to be repeated in order to sell off only as many shares are as necessary to satisfy judgments held by creditors of *PDVSA* — a much smaller pool (only three creditors to date) whose judgments likely could be satisfied by selling a *minority* stake in PDVH.

*Second*, even if the Third Circuit were to agree with this Court's decision at the end of the sale process, the absence of Third Circuit guidance in the interim introduces a degree of uncertainty that potential bidders are likely to take into account. For some potential bidders, this uncertainty could lead them to discount their bids or decide not to bid at all — to the detriment of all parties and to the risk of the validity of the sale. The "whole point of the . . . sales process required under Delaware law is to *maximize* the sales price obtained," *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-MC-151-LPS, 2021 WL 129803, at *18 (D. Del. Jan. 14,

2021) (emphasis added); *see* 8 Del. C. § 324(a) ("So many of the shares . . . may be sold at public sale to the highest bidder, as shall be sufficient to satisfy the debt . . . ."), and the risk introduced by the possibility that the Third Circuit will reverse on the basis that the PDVSA's shares were erroneously attached in violation of Delaware's alter ego laws runs counter to the Court's stated value-maximizing objective.  There is no good reason to defer appellate resolution of the question here, only to see a final sale order set aside due to this procedural defect.  *See Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994) (explaining that a court reviewing a sale "must ascertain whether there was some defect or irregularity in the process or mode of conducting the sale," and "impropriety, misconduct, surprise or irregularity in the sale process will support judicial invalidation of the sale") (internal quotation marks omitted).

Immediate review of the important legal question presented here, by contrast, would provide clarity about the number and amount of judgments that must be satisfied in the sale process and potentially simplify that process as well.  "[A]n immediate appeal has the potential to greatly conserve the resources of the judiciary and the parties, particularly in light of the numerous proceedings that have taken place . . . , the closely related cases also pending before the Court, and the effort already expended by all involved, thereby making certification appropriate."  *See Chase Manhattan Bank v. Iridium Afr. Corp.*, 324 F. Supp. 2d 540, 545-46 (D. Del. 2004).

Immediate review will also provide clarity to the parties and bidders without causing delay in the sale process.  If the Court certifies its November 1 Order, the Venezuela Parties will seek expedited review by the Third Circuit, which has already shown a willingness to act "promptly" in light of the pending sale process.  *See* Order, *OIEG II*, No. 23-1781 (3d Cir. May 5, 2023), ECF

No. 4.[4]   Interlocutory review would also decrease the risk of chaotic stay proceedings at the conclusion of the sale process and serve to accelerate the orderly and prompt termination of these proceedings.

       **B.**    **There Is Substantial Ground for Difference of Opinion.**

There is "substantial ground for difference of opinion" as to the question of law of whether this Court should apply Delaware law or federal common law in analyzing whether PDVSA is the alter ego of the Republic for purposes of attachment of PDVSA's property.  *See* 28 U.S.C. § 1292(b).  This § 1292(b) prong is established where there is either "[c]onflicting and contradictory opinions" or "the absence of controlling law on a particular issue."  *Wright v. Elton Corp.*, C.A. No. 17-286-JFB, 2023 WL 2563178, at *3 (D. Del. Mar. 17, 2023).  District courts have recognized that they may certify an issue for interlocutory appeal based on the absence of binding precedent without first awaiting the development of contradictory authority.  *See e.g.*, *Garza v. Citigroup, Inc.*, C.A. No. 15-537-SLR, 2016 WL 50327, at *1 (D. Del. Jan. 4, 2016) (certifying for appeal an issue "which has not been resolved by the Third Circuit and over which there is substantial debate").  Ultimately, this factor is satisfied "where reasonable jurists might disagree on an issue's resolution."  *Reese*, 643 F.3d at 688; *accord Obasi Inv. LTD v. Tibet Pharms., Inc.*, 931 F.3d 179, 183 (3d Cir. 2019).  And because § 1292(b)'s "safety valve" is particularly important when an order "raises serious legal questions taking the case out of the ordinary run," *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994), the "level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case," 16 Charles Alan Wright, et al., Federal Practice &

---

[4]      Indeed, in the *OIEG II* appeal, the Third Circuit ordered expedited briefing and held oral argument within one month after the appeal was initially docketed, and it issued its opinion the following month.  *See OIEG II*, No. 23-1781 (3d Cir.), ECF Nos. 1, 6, 25.

Procedure Jurisdiction § 3930 (3d ed.); *see Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) ("The preconditions for § 1292(b) review . . . are most likely to be satisfied when" an order "involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.").

Certainly no binding precedent in the Third Circuit directly addresses the specific question. Indeed, in its most recent opinion in the proceedings related to the present actions, the Third Circuit made clear that its "[r]esolution of the immunity issue does not dictate the outcome of the attachment issue" *OIEG II*, 73 F.4th at 176, and instead elected to remain silent on the issue squarely presented by Plaintiffs' attachment motions: what law applies in determining whether a non-debtor's property should be attached in order to satisfy a judgment against the Republic. While — as the Court pointed out during the September 12, 2023 hearing, *see* Transcript, at 81 — the Third Circuit has heretofore declined to opine on the merits of the legal question presented, this Court's interlocutory certification would encourage the Court of Appeals to take up this question to arrive at a clear answer at this preliminary stage of the litigation and where resolution would create efficiencies for both the Court and the parties.

Importantly, this Court's November 1 Order broke new ground on several fronts, making it all the more likely that the Third Circuit may disagree. The Court fashioned a novel distinction in Rule 69 jurisprudence governing attachment proceedings — limiting state law's applicability to a narrowly defined set of "procedural" questions and applying federal common law to purported "substantive" questions. Binding Third Circuit case law in *Schreiber v. Kellogg*, supported by over one hundred years of precedent, says precisely the opposite: "Under Rule 69(a) of the Federal Rules of Civil Procedure, a federal court must follow relevant state law in a proceeding to execute on a judgment, unless a federal statute dictates otherwise." 50 F.3d 264, 267 (3d Cir. 1995); *see*

*also Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 193 (1941) ("[A]ttachment is wholly the creature of, and controlled by, the law of the state."); *Chi., R.I. & P. Ry. Co. v. Sturm*, 174 U.S. 710, 717-18 (1899) ("Exemption laws . . . are part of the remedy, and subject to the law of the forum."). Indeed, in *Schreiber*, the Third Circuit "look[ed] ***to Pennsylvania law***," not federal common law, "to determine" the plainly substantive question of "whether [the plaintiff] may execute on [defendant]'s interest in [a] trust." 50 F.3d 264, 267 (3d Cir. 1995) (emphasis added).

The question at issue in these cases is substantially similar: 8 *Del. C.* § 324(a) provides that stock in a Delaware corporation (a type of property) may be attached *if* the debtor is named on the books of the corporation as the owner of (*i.e.*, has an interest in) the shares. PDVSA, not the Republic, is listed as the owner of the PDVH shares. The question, then, is whether *Delaware* would recognize that the Republic has a cognizable interest in the shares under veil-piercing principles such that the shares are a type of property that can be reached by its creditors.[5] *See Kingsland Holding, Inc. v. Bracco*, C.A. No. 14817, 1996 WL 104257, at *7 (Del. Ch. Mar. 5, 1996) ("Incident to its power to enforce [a] judgment through the seizure and sale of property located in Delaware, the Court . . . may determine the nature of [a defendant's] *interest* in stock [and]. . . in its discretion may 'decide to disregard the existence of a subsidiary corporation and look directly to the specific assets of a subsidiary for the satisfaction of [a] claim against the parent.'" (citing *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686 (Del. 1959)) (emphasis added)); *cf. Bramble Transp., Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 100

---

[5]     In this way, this Court's suggestion that some of the cases — like *Schreiber* — cited by the Venezuela Parties are distinguishable because they address only what "types of assets and interests may be attached" under state law, *Tidewater Inv.*, 2023 WL 7182179, at *10 (emphasis omitted), is, in fact, a reason why they illuminate the proper outcome here.

(Del. Super. Ct. 1971), *aff'd*, 294 A.2d 104 (Del. 1972) ("An attachment creditor reaches only the interest which a debtor had at the time of attachment . . . ."). And federal courts routinely apply state law to veil-piercing arguments in execution or attachment proceedings. *See, e.g.*, *Dexia Credit Local v. Rogan*, 629 F.3d 612, 622-23 (7th Cir. 2010) (looking to whether the law of the forum state permitted judgment creditor to reach assets of debtor in the hands of third parties under an alter ego veil-piercing theory); *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1327 (7th Cir. 1992) (refusing attachment of property held by alleged alter ego where state law permitted collection only against named judgment debtors); *Christiansen v. Mech. Contractors Bid Depository*, 404 F.2d 324, 325 (10th Cir. 1968) (Utah law governed whether property held by alleged successor and alter ego corporation could be attached in satisfaction of judgment against old corporation); *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 524 (S.D.N.Y. 2014) (applying New York veil-piercing standard to Rule 69(a) motion to attach third-party property under an alter ego theory).

The Court attempted to distinguish these cases as applying to "different situations, such as amending judgment or initiating special proceedings." *Tidewater Inv.*, 2023 WL 7182179, at *9. Respectfully, the Venezuela Parties do not believe that the cases can all be so distinguished, but even if they could, it is a distinction without a difference. Many states *do not allow* a creditor to enforce its judgments directly against an alleged alter ego's assets — the procedural mechanism the creditors have invoked here — but instead require the creditor to first invoke a different mechanism, such as amending judgments or initiating special proceedings. *E.g.*, *Bautista v. ABC Corp.*, No. 19-CV-3963-LTS, 2023 WL 5917636, at *3-4 (S.D.N.Y. Sept. 11, 2023) (explaining that, under New York law, a "special proceeding" to collect money held by a third party due to a fraudulent transfer is available, but pursuing a nonparty in post-judgment proceedings purely on

an alter ego theory is not permissible).  Other states, like Delaware, do allow for the assertion of an alter ego theory under the more direct procedure.  Technical differences in the procedural posture of those cases do not override their relevance to the broader point: when veil-piercing is bound up in a state procedure for judgment enforcement or attachment, federal courts apply state law to the veil-piercing question.  Nor has any court other than this one ever held that veil-piercing and alter ego questions, alone among all issues otherwise governed by state law under Rule 69, should be governed by federal common law.  As such, there is at least a substantial ground for difference of opinion on whether the Third Circuit would recognize such a novel distinction.

The Court's opinion also made references to the fact that the Republic is a foreign sovereign, seeming to suggest that warranted unique application of Rule 69.  *E.g.*, *Tidewater Inv.*, 2023 WL 7182179, at *8 n.9, *10 n.12.  The Federal Rules of Civil Procedure provide no such carveout.  *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in *all* civil actions and proceedings in the United States district courts" (emphasis added), apart from a handful of exceptions not relevant here); *see also Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138-40, 143 n.3 (2014) (rejecting argument that the FSIA implicitly alters or overrides Rule 69 when "the judgment debtor is a foreign state"); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130-31 (9th Cir. 2010) (California law determined location of "intangible right to payment" owned by foreign state); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 473-74 (2d Cir. 2007) (state law determined whether bank accounts were owned by foreign state or its instrumentality); *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 595-96 n.4 (5th Cir. 2006) (applying Texas law to determine whether Congo and an oil company owned by Congo possessed attachable interests in mineral royalties); *Alejandre v. Telefonica Larga Distancia, de P.R., Inc*., 183 F.3d 1277, 1285 (11th Cir. 1999) (concluding that "we must also be guided by relevant

principles of Florida garnishment law" in a case involving a judgment against a foreign sovereign);[6] *see also* 28 U.S.C. § 1606 (a foreign state that is not immune should be treated the same way as "a private individual under like circumstances").

The Court's discussion of choice of law also provides substantial grounds for difference of opinion. The Venezuela Parties maintain that it is the text of Rule 69(a) and the FSIA that provide for the application of Delaware alter ego law here, and not Delaware choice-of-law principles. This is consistent with the approach of the Delaware Supreme Court, which has held that *Delaware* law applies to the veil-piercing issue in a post-judgment enforcement case, obviating the need to ponder how a choice-of-law analysis could come out. *Buechner*, 154 A.2d 684, 687. Indeed, *Buechner* was a case in which both the debtor and owner of foreign stock were *foreign corporations*. *See* 154 A.2d at 686 (Canadian subsidiary and German parent). The Court dismissed *Buechner* because the case did not discuss choice of law or explain its application of Delaware law. *Tidewater Inv.*, 2023 WL 7182179, at *10 n.12. Respectfully, that is no basis to ignore the dictates of a Delaware Supreme Court case, and indeed the point was that the *Buechner* Court did not think there was any choice of law analysis to be done; Delaware law, not Canadian law or German law or federal common law, applies in attachment cases. *See also Huron Holding Corp.*, 312 U.S. at 193 ("[A]ttachment is wholly the creature of, and controlled by, the law of the state."); *United States v. Miller*, 229 F.2d 839, 840-41 (3d Cir. 1956) (under Rule 69, "matters of attachment, execution and the like are to be determined by the law of the forum and not the law of

---

[6] The Court's effort to distinguish *Alejandre* — which the Court recognized involved a very similar procedural posture — was based solely on speculating that the Eleventh Circuit would not have applied Florida law to the alter ego question had its *Bancec* jurisdictional analysis turned out differently. *Tidewater Inv.*, 2023 WL 7182179, at *10 n.11. That is not enough to overcome the express statements in *Alejandre* that the Court had to apply "principles of Florida garnishment law," and the Third Circuit could easily afford the Eleventh Circuit a more charitable reading of its case law.

the place where judgment was rendered or a debt contracted").  The same was true in *Kingsland Holdings*.  *See* 1996 WL 104257, at *1, *4 (Netherlands subsidiary and Italian parent).  Moreover, contrary to the Court's supposition, there is no indication in *Buechner* that the Delaware Supreme Court would take a different approach if a foreign *sovereign* were involved.  It is not for a federal court to innovate or gap-fill on the Delaware Supreme Court's behalf; the Delaware Supreme Court has spoken, and the federal courts should abide by its approach.  *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent."); *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 425 (D.C. Cir. 1988) ("It is decidedly not the business of the federal courts to alter or augment state law to meet the felt necessities of the case[.]").

With the exception of this Court's prior rulings, there is no case law to support applying *Bancec* and federal common law to issue an attachment (as opposed to resolving FSIA immunity), or otherwise suggesting that federal common law has a role to play in the analysis of the validity of an attachment or other execution-related measure under Rule 69.  In the absence of controlling authority to answer this pure question of law — and especially given the significance of the question and this litigation more generally — this Court should certify the November 1 Order to the Third Circuit for the benefit of appellate review.

C.      **The Order Involves a Controlling Question of Law.**

Finally, the Court's order raises a controlling question of law that is critically important to any party seeking or defending against a writ of execution under Rule 69:  What law — Delaware law or federal common law — should a district court apply in determining whether property owned by a sovereign instrumentality other than the judgment debtor is subject to attachment in Delaware?

A question of law is controlling where the answer "would be reversible error on final appeal" or it is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755; *see also Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1213 (3d Cir. 1976) (same). The reversible error need not "terminate the litigation"; and "on the practical level, saving of time of the district court and of expense to the litigants" is "a highly relevant factor." *Katz*, 496 F.2d at 755.

Here, the question of law is controlling for two reasons, each of which is independently sufficient to satisfy this prong. *First*, a resolution of the question in the Venezuela Parties' favor on appeal after a final judgment would require reversal. As the Venezuela Parties argued in their underlying papers, the Seven Creditors have failed to meet Delaware law's requirement of "showing fraud — not just extensive control — to seize the property of a non-debtor like PDVSA." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 247-48 (3d Cir. 2022).[7] Indeed, the Venezuela Parties have argued the same as pertains to Crystallex's attachment, which is the cornerstone of the entire sale process. Thus, "[t]he Court's conclusions regarding these purely legal issues were dispositive," and — to the extent that the Third Circuit were to agree that applying Delaware law to the attachment issues is appropriate here — may "require dismissal of the action if reversed on appeal." *See Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, C.A. No. 15-1082-LPS, 2016 WL 7440471, at *2 (D. Del. Dec. 27, 2016); *see also LM Gen. Ins. Co. v. LeBrun*, C.A. No. 19-2144-KSM, 2020 WL 7770233, at *6 (E.D. Pa. Dec. 30, 2020), *order amended on reconsideration*, 2021 WL 322858 (E.D. Pa. Jan. 29, 2021) (finding controlling

---

[7]     The November 1 Order does not dispute that the Seven Creditors are unable to meet the stringent test under Delaware law. *See Tidewater Inv.*, 2023 WL 7182179, at *11 n.14; *see also Crystallex*, 333 F. Supp. 3d at 403 (concluding that Crystallex failed to show that the "Republic abused PDVSA's corporate form to perpetrate a fraud or injustice").

question of law where the Third Circuit's potential ruling, if "resolved in [plaintiff's] favor[,] . . . could end the case").

*Second*, the question of law is controlling because it is "serious to the conduct of the litigation," both "legally" and "practically." *See Katz*, 496 F.2d at 755.  Legally, at bottom, this case is about what limits circumscribe Plaintiffs' ability to execute on the property of sovereign entities other than the judgment debtor in order to satisfy a judgment.  Appellate review of the Court's recent order would clarify the legal question at the heart of this case: Must Plaintiffs satisfy the Delaware alter ego standard to reach PDVSA's property?  Answering this question involves the "resolution of complex questions of statutory interpretation," *see Crystallex Int'l Corp.*, 2016 WL 7440471, at *2, including the proper scope of Rule 69(a)'s instruction that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located" and the FSIA's directive that if a foreign state is not immune, it "shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606.[8]

Moreover, "[o]n the practical level, a number of factors" make the question of law here "controlling." *Ungar*, 531 F.2d at 1213-14.  <u>First</u>, the uncertainty created by the absence of appellate review at this juncture threatens to taint the result and may require a costly repeat of the sale process; thus, the potential unnecessary "expense to the litigants" cuts in favor of a finding that the question of law is controlling.  *See id.* at 1214.  <u>Second</u>, the Third Circuit's resolution of the controlling question would result in "the saving of time of the District Court."  *Id.*  "It would

---

[8]     The November 1 Order also questioned whether the application of Delaware choice-of-law analysis would require the application of federal common law rather than Delaware law to the Seven Creditors' attachment motions. *See Tidewater Inv.*, 2023 WL 7182179, at *10.  The Venezuela Parties maintain that it is the text of Rule 69(a) and the FSIA that provide for the application of Delaware alter ego law here, and not Delaware choice-of-law principles. *See infra* at pp. 13-14.

amount to an incredible waste of time and expense for the litigants and the [C]ourt" if the Court were to proceed with the extensive sale process to satisfy these Plaintiffs' claims "only to find out on direct appeal that . . . judgment should have been entered" in favor of the Republic. *See Marcelle v. City of Allentown*, C.A. No. 07-CV-4376, 2010 WL 3606405, at *2 (E.D. Pa. Sept. 16, 2010). <u>Third</u>, the question of law presented for appellate review is controlling because in the absence of that review, there exists an "inhibition of potential settlement caused by uncertainty as to" the propriety of attaching PDVSA's shares in order to satisfy judgments against the Republic. *See Ungar*, 531 F.2d at 1214. In sum, "because the purely legal question certified to the Third Circuit" may "lead to dismissal of the action in its entirety or . . . allow the entire case to go forward, certification of the Court's order would not run afoul of the strong policy established by federal law against piecemeal appeals." *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 115-116 (M.D. Pa. 2021).

The November 1 Order's alternate holding — that the Venezuela Parties are collaterally estopped from arguing that Delaware alter ego principles apply to the Seven Creditors' attachment motions — does not negate the existence of a controlling question of law here. Should the Third Circuit agree with the Venezuela Parties that Delaware law rather than federal common law provides the appropriate legal standard for evaluating the Seven Creditors' requests to attach property belonging to PDVSA, that would fundamentally undermine this Court's prior, non-final holdings in the *Crystallex* and *OIEG* cases, which were the basis for the collateral-estoppel holding in the present cases.

Notably, the Third Circuit has never opined on the question of law presented here; this Court's prior, non-final rulings form the only basis for the Court's recent collateral estoppel alternate holding. As the Court recognized in the November 1 Order, "the Third Circuit . . . stated

in *OIEG II* that it was limiting its review of this Court's decision in *OIEG I* to the 'narrow question' of whether the Court properly denied PDVSA **immunity** under the FSIA." *Tidewater Inv.*, 2023 WL 7182179, at *7 (quoting *OIEG II*, 73 F.4th at 165).  In so doing, the Third Circuit concluded that it lacked jurisdiction to "consider the propriety of attachment under the Federal Rules" while suggesting that "[r]esolution of the immunity issue does not dictate the outcome of the attachment issue." *OIEG II*, 73 F.4th at 175-76.  For the same reason, the panel hearing the *Crystallex* appeal declined to decide whether the attachment in that case "conflicts with Delaware alter ego law." *Crystallex*, 24 F.4th at 249.

Finally, the question to be certified here does not arise out of mere "ordinary litigation." *See Milbert v. Bison Lab's, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).  The Plaintiffs here — together with the other creditors of the Republic ahead of them in the process — seek to force the sale of billions of dollars' worth of shares in a Delaware corporation in order to satisfy judgments against a sovereign state, constituting one of the largest forced sales in Delaware history.  This litigation also has significant international implications.  The unlawful Maduro regime, for example, has used this Court's prior orders to justify its recent decision to issue a warrant for the arrest of Juan Guaidó, the now-exiled opposition leader whom the United States recognized as interim president.[9]  The "uniqueness, exceptionality, [and] extraordinary importance of the question of law involved, and the magnitude of the case itself," all favor the certification of the Court's recent

---

[9]    *See Ministerio Público emitió una orden de captura contra Juan Guaidó y solicitará alerta roja de Interpol,* El Nacional (Oct. 5, 2023), https://www.elnacional.com/venezuela/politica/ministerio-publico-emitio-una-orden-de-captura-a-juan-guaido/; Press Release, U.S. Dep't of State, U.S. Recognition of Venezuela's 2015 National Assembly and Interim President Guaidó (Jan. 4, 2022), available at https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-interim-president-guaido/; *see also* Ana Vanessa Herrero and Samantha Schmidt, *Venezuela issues arrest warrant against opposition leader Juan Guaidó*, Wash. Post (Oct. 5, 2023), https://www.washingtonpost.com/world/2023/10/05/venezuela-guaido-arrest/.

order for appeal. *See In re Cargill Meat Sols. Wage & Hour Litig.*, No. 3:06-CV-00513, 2008 WL 11366373, at *7 (M.D. Pa. July 11, 2008) (cleaned up). Indeed, this Court previously certified an order denying a motion to dismiss a claim brought by Crystallex against PDVSA under Delaware's Uniform Fraudulent Transfer Act, emphasizing that the "international comity" considerations and "enormous sums of money . . . at stake" set "this case apart." *Crystallex Int'l Corp.*, 2016 WL 7440471, at *2, *accepting appeal and reversing*, 879 F.3d 79 (3d Cir. 2018). Given that these considerations apply *a fortiori* here, this Court should not hesitate to take the same approach.

## IV.   CONCLUSION

The Court should certify the November 1 Order granting the Seven Creditors' attachment motions and denying PDVSA's motions to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: November 13, 2023

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

Respectfully submitted,

*/s/ Christopher Fitzpatrick Cannataro*
A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com
cannataro@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
Aubre G. Dean
Allesandra D. Tyler
Curtis, Mallet Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com
adean@curtis.com
atyler@curtis.com

/s/ Samuel T. Hirzel, II
Samuel T. Hirzel, II (#4415)
Brendan Patrick McDonnell (#7086)
HEYMAN ENERIO GATTUSO & HIRZEL, LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law
bmcdonnell@hegh.law

*Attorneys for Intervenor Petróleos de Venezuela, S.A. in the Contrarian, Lovati, Pharo Gaia, Gramercy, and Saint-Gobain Cases*

Claire A. DeLelle
Nicole Erb
Benedict S. Bernstein
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20003
(202) 626-3600
claire.delelle@whitecase.com
nerb@whitecase.com
benedict.bernstein@whitecase.com

/s/ Samuel T. Hirzel, II
Samuel T. Hirzel, II (#4415)
Brendan Patrick McDonnell (#7086)
HEYMAN ENERIO GATTUSO & HIRZEL, LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law
bmcdonnell@hegh.law

*Attorneys for Intervenor Petróleos de Venezuela, S.A. in the Tidewater and Valores Cases*